# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BLACKBIRD TECH LLC d/b/a<br>BLACKBIRD TECHNOLOGIES,<br><br>      Plaintiff,<br><br>v.<br><br>FITBIT, INC.<br><br>      Defendant. | C.A. No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Blackbird Tech LLC d/b/a Blackbird Technologies ("Blackbird Technologies") hereby alleges for its Complaint for Patent Infringement against the above-named Defendant, on personal knowledge as to its own activities and on information and belief as to all other matters, as follows:

## THE PARTIES

1.     Plaintiff Blackbird Technologies is a limited liability company organized under the laws of Delaware, with its principal place of business located at One Boston Place, Suite 2600, Boston, MA 02108.

2.     Defendant Fitbit is a corporation organized under the laws of Delaware, with its principal place of business located at 405 Howard Street, San Francisco, CA 94015. Fitbit, Inc.'s registered agent for service is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE, 19801.

## JURISDICTION AND VENUE

3.   This is an action for patent infringement arising under the provisions of the Patent Laws of the United States of America, Title 35, United States Code §§ 100, *et seq*.

4.   Subject matter jurisdiction over Blackbird Technologies' claims is conferred upon this Court by 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (patent jurisdiction).

5.   This Court has personal jurisdiction over Defendant because Defendant is subject to general and specific jurisdiction in the State of Delaware.

6.   Defendant is a Delaware corporation.

7.   Defendant regularly conducts business in the State of Delaware, including by selling and/or offering to sell products, such as fitness trackers, in the State of Delaware. For example, Fitbit uses product dealers and distributors in the United States to offer to sell and sell fitness trackers in Delaware, among other states, including Kohl's, Target, Dick's Sporting Goods, amazon.com, Walmart, and Best Buy. Defendant has established minimum contacts with this forum. Defendant's actions constitute patent infringement in this District in violation of 35 U.S.C. § 271, and Defendant has placed infringing products into the stream of commerce, with the knowledge and understanding that such products are sold and/or offered for sale in this District. The acts by Defendant have caused injury to Blackbird Technologies within this District.

8.   Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 (b) and (c) and § 1400(b) and because Defendant transacts business within this District and has sold and/or offered for sale in this District products that infringe claims of U.S. Patent No. 6,434,212.

BACKGROUND

9.      Defendant's product line of wearable devices includes the Charge HR, the Charge, the Surge, the Blaze, the Alta, and the Flex.

10.     Defendant Fitbit's use, manufacture, import, offer for sale, and/or sale of the Charge HR, the Charge, the Surge, the Blaze, the Alta, and the Flex infringe one or more claims of the Patent-in-Suit.

COUNT I – INFRINGEMENT OF U.S. PATENT NO. 6,434,212

11.     Blackbird Technologies reasserts and incorporates herein by reference the allegations of all preceding paragraphs of this Complaint as if fully set forth herein.

12.     On August 13, 2002, U.S. Patent No. 6,434,212 (the "212 Patent") entitled "Pedometer," a true and correct copy of which is attached hereto as Exhibit 1, was duly and legally issued by the U.S. Patent and Trademark Office. Blackbird Technologies is the owner by assignment of all rights, title, and interest to the 212 Patent, including all rights to recover for any and all infringement thereof. The 212 Patent is valid and enforceable.

13.     The 212 Patent concerns pedometers and exercise monitoring devices. A pedometer or other exercise monitoring device is not a general purpose computer.  At the time of invention, those working in the field knew that it would be useful for pedometers and other exercise monitoring devices to track various fitness-related activities, such as the distance travelled by a person wearing or otherwise carrying the device while travelling by foot. However, although some exercise monitoring devices known at the time of invention could estimate distance travelled, they utilized many various designs to do so, with highly varying degrees of accuracy.

14. The designs claimed in the 212 Patent represent specific improvements to the exercise monitoring device itself – including, in Claims 2 and 5, a step counter and heart rate monitor joined to a strap used to releasably secure the exercise monitoring device to the user – as well as to the technological processes relied upon by such devices to estimate distance travelled.

15. With respect to foot travel, the length of a person's stride (stride length) generally varies with how many strides the person is taking over a given period of time (stride rate). Moreover, the relationship between stride length and stride rate itself varies from person to person. Improvements claimed in the 212 Patent resulted from the inventor conceiving of specific design configurations for pedometers and other exercise monitoring devices that could effectively utilize these relationships to improve the accuracy of distance calculations by enabling the device to efficiently account for changes in a user's pace during a workout without losing accuracy in distance calculation. For example, pedometers and other exercising monitoring devices claimed in the 212 Patent include data processors, step counters, transmitters, and receivers arranged and programmed in specific ways in order to apply the relationship between stride length and stride rate and to accommodate the varying nature of that relationship across individuals, and ultimately in order to improve accuracy. Pedometers and other exercising monitoring devices claimed in the 212 Patent optionally further include componentry for supporting, performing, and utilizing a calibration function that effectuates the inventor's recognitions about variations in stride by analyzing input signals and performing calculations based on those signals.

16. Advantages for the user of pedometers embodying the claimed designs include convenience and accuracy. For the manufacturer, such advantages include lower costs of manufacturing.

Fitbit Charge HR

17. Fitbit has infringed literally and/or under the doctrine of equivalents one or more of the claims of the 212 Patent by making, using, importing, selling and/or offering to sell, in this judicial district and/or elsewhere in the United States, the Charge HR, which is covered by at least claims 2, 5, and 6 of the 212 Patent.

18. The Charge HR is an exercise monitoring device with a strap for releasably securing the device to a user.  Exhibit 4 (Charge HR Product Manual) at 1.

19. Both a step counter and a heart rate monitor are joined to the strap.  Exhibit 4 (Charge HR Product Manual) at 21.

20. The Charge HR includes a data processor programmed to calculate the distance travelled by the user.  Ex. 2 (Fitbit Help Answer on Extra Steps) at 2; Ex. 11 (Teardown Fitbit Charge).

21. According to Fitbit, its devices utilize a "finely tuned algorithm" for step counting that accounts for "people walking and running."  Ex. 2 (Fitbit Help Answer on Extra Steps) at 2.

22. The device multiplies the number of steps counted by the step counter by a stride length that varies in accordance with a stride rate.

23. Fitbit trackers "calculate distance by multiplying [] walking steps and walking stride length … [and] running steps are multiplied by [] running stride length." Ex. 3 (Fitbit Help Answer on Stride Length) at 2.

24. The stride length is determined, at least in certain configurations, with reference to a plurality of calibrations that each calculate a stride length as a function of a known stride rate.

25.     To improve accuracy of distance measurement, Fitbit devices allow the user to "adjust" the device's algorithm based on the user's personal stride rate for both walking and running. Ex. 3 (Fitbit Help Answer on Stride Length) at 2.

26.     Fitbit instructs users to determine their personal stride length by both walking and running, separately, a distance the user is "sure of." Ex. 3 (Fitbit Help Answer on Stride Length) at 2.

27.     Thus, the device utilizes a plurality of calibrations as the basis for the determination of stride length as it varies with stride rate whenever a user utilizes this feature.

28.     Furthermore, the device calculates a distance travelled by multiplying a number of steps counted by a stride length that varies according to a rate at which steps are taken, and is further programmed to derive an actual stride length from a range of stride lengths calculated from a range of corresponding stride rates, at least whenever a user utilizes this feature.

29.     Moreover, the Charge HR can display "steps," therefore it must include a transmitter in communication with the step counter to generate a step count signal corresponding to each step and transmit the step count signal as well as a receiver to receive the step count signal transmitted from the transmitter. Ex. 4 (Charge HR Manual) at 10.

30.     The receiver is mountable on a user body portion. Ex. 4 (Charge HR Manual) at 1.

31.     As such, at least claims 2, 5, and 6 of the 212 Patent read on the Charge HR.

### Fitbit Charge

32.     Further, Fitbit has infringed literally and/or under the doctrine of equivalents one or more of the claims of the 212 Patent by making, using, importing, selling and/or offering to

sell, in this judicial district and/or elsewhere in the United States, the Charge, which is covered by at least claim 6 of the 212 Patent.

33. The Charge is a pedometer with a step counter. Ex. 7 (Charge Product Manual) at 8.

34. The Charge can display "steps," therefore it must include a transmitter in communication with the step counter to generate a step count signal corresponding to each step and transmit the step count signal as well as a receiver to receive the step count signal transmitted from the transmitter. Ex. 7 (Charge Product Manual) at 8.

35. The receiver is mountable on a user body portion. Ex. 7 (Charge Product Manual) at 1.

36. The Charge includes a data processor programmed to calculate the distance travelled by the user. Ex. 11 (Teardown Fitbit Charge); Ex. 2 (Fitbit Help Answer on Extra Steps) at 2.

37. According to Fitbit, its devices utilize a "finely tuned algorithm" for step counting that accounts for "people walking and running." Ex. 2 (Fitbit Help Answer on Extra Steps) at 2.

38. Fitbit trackers "calculate distance by multiplying [] walking steps and walking stride length … [and] running steps are multiplied by [] running stride length." Ex. 3 (Fitbit Help Answer on Stride Length) at 2.

39. As such, the device multiplies the number of steps counted by the step counter by a stride length that varies in accordance with a stride rate.

40. To improve accuracy of distance measurement, Fitbit devices allow the user to "adjust" the device's algorithm based on the user's personal stride rate for both walking and running. Ex. 3 (Fitbit Help Answer on Stride Length) at 2.

41. Fitbit instructs users to determine their personal stride length by both walking and running, separately, a distance the user is "sure of." Ex. 3 (Fitbit Help Answer on Stride Length) at 2.

42. Thus, the device calculates a distance travelled by multiplying a number of steps counted by a stride length that varies according to a rate at which steps are taken, and is further programmed to derive an actual stride length from a range of stride lengths calculated from a range of corresponding stride rates, at least whenever a user utilizes this feature.

43. As such, at least claim 6 of the 212 Patent reads on the Charge.

Fitbit Surge

44. Further, Fitbit has infringed literally and/or under the doctrine of equivalents one or more of the claims of the 212 Patent by making, using, importing, selling and/or offering to sell, in this judicial district and/or elsewhere in the United States, the Surge, which is covered by at least claims 2, 5, and 6 of the 212 Patent.

45. The Surge is an exercise monitoring device with a strap for releasably securing the device to a user. Exhibit 5 (Fitbit Surge Product Manual) at cover, 16.

46. Both a step counter and a heart rate monitor are joined to the strap. Exhibit 5 (Fitbit Surge Product Manual) at cover, 16; *see also* Ex. 15 (Teardown Fitbit Surge).

47. The Surge includes a data processor programmed to calculate the distance travelled by the user. Ex. 15 (Teardown Fitbit Surge); Ex. 2 (Fitbit Help Answer on Extra Steps) at 2.

48. According to Fitbit, its devices utilize a "finely tuned algorithm" for step counting that accounts for "people walking and running." Ex. 2 (Fitbit Help Answer on Extra Steps) at 2.

49. The device multiplies the number of steps counted by the step counter by a stride length that varies in accordance with a stride rate.

50. Fitbit trackers "calculate distance by multiplying [] walking steps and walking stride length … [and] running steps are multiplied by [] running stride length." Ex. 3 (Fitbit Help Answer on Stride Length) at 2.

51. The stride length is determined, at least in certain configurations, with reference to a plurality of calibrations that each calculate a stride length as a function of a known stride rate.

52. To improve accuracy of distance measurement, Fitbit devices allow the user to "adjust" the device's algorithm based on the user's personal stride rate for both walking and running. Ex. 3 (Fitbit Help Answer on Stride Length) at 2.

53. Fitbit instructs users to determine their personal stride length by both walking and running, separately, a distance the user is "sure of." Ex. 3 (Fitbit Help Answer on Stride Length) at 2.

54. Thus, the device utilizes a plurality of calibrations as the basis for the determination of stride length as it varies with stride rate whenever a user utilizes this feature.

55. Furthermore, the device calculates a distance travelled by multiplying a number of steps counted by a stride length that varies according to a rate at which steps are taken, and is further programmed to derive an actual stride length from a range of stride lengths calculated from a range of corresponding stride rates, at least whenever a user utilizes this feature.

56. The device further calculates a distance traveled by deriving an actual stride rate from a range of stride lengths calculated from a range of corresponding stride rates.

57. Moreover, the Surge can display "steps," therefore it must include a transmitter in communication with the step counter to generate a step count signal corresponding to each step and transmit the step count signal as well as a receiver to receive the step count signal transmitted from the transmitter. Ex. 5 (Surge Manual) at 11.

58. The receiver is mountable on a user body portion. Ex. 5 (Surge Manual) at 1.

59. As such, at least claims 2, 5, and 6 of the 212 Patent read on the Surge.

Fitbit Blaze

60. Further, Fitbit has infringed literally and/or under the doctrine of equivalents one or more of the claims of the 212 Patent by making, using, importing, selling and/or offering to sell, in this judicial district and/or elsewhere in the United States, the Blaze, which is covered by at least claims 2, 5, and 6 of the 212 Patent.

61. The Blaze is an exercise monitoring device with a strap for releasably securing the device to a user. Exhibit 6 (Fitbit Blaze Product Manual) at 1, 12.

62. Both a step counter and a heart rate monitor are joined to the strap. Exhibit 6 (Fitbit Blaze Product Manual) at 1, 12 *see also* Ex. 14 (Teardown Fitbit Blaze).

63. The Blaze includes a data processor programmed to calculate the distance travelled by the user. Ex. 14 (Teardown Fitbit Blaze); Ex. 2 (Fitbit Help Answer on Extra Steps) at 2.

64. According to Fitbit, its devices utilize a "finely tuned algorithm" for step counting that accounts for "people walking and running." Ex. 2 (Fitbit Help Answer on Extra Steps) at 2.

65. The device multiplies the number of steps counted by the step counter by a stride length that varies in accordance with a stride rate.

66. Fitbit trackers "calculate distance by multiplying [] walking steps and walking stride length … [and] running steps are multiplied by [] running stride length." Ex. 3 (Fitbit Help Answer on Stride Length) at 2.

67. The stride length is determined, at least in certain configurations, with reference to a plurality of calibrations that each calculate a stride length as a function of a known stride rate.

68. To improve accuracy of distance measurement, Fitbit devices allow the user to "adjust" the device's algorithm based on the user's personal stride length for both walking and running. Ex. 3 (Fitbit Help Answer on Stride Length) at 2.

69. Fitbit instructs users to determine their personal stride length by both walking and running, separately, a distance the user is "sure of." Ex. 3 (Fitbit Help Answer on Stride Length) at 2.

70. Thus, the device utilizes a plurality of calibrations as the basis for the determination of stride length as it varies with stride rate whenever a user utilizes this feature.

71. Furthermore, the device calculates a distance travelled by multiplying a number of steps counted by a stride length that varies according to a rate at which steps are taken, and is further programmed to derive an actual stride length from a range of stride lengths calculated from a range of corresponding stride rates, at least whenever a user utilizes this feature.

72. Moreover, the Blaze can display "steps," therefore it must include a transmitter in communication with the step counter to generate a step count signal corresponding to each step and transmit the step count signal as well as a receiver to receive the step count signal transmitted from the transmitter. Ex. 6 (Blaze Manual) at 12.

73. The receiver is mountable on a user body portion. Ex. 6 (Blaze Manual) at 1.

74. As such, at least claims 2, 5, and 6 of the 212 Patent read on the Blaze.

## Fitbit Alta

75. Further, Fitbit has infringed literally and/or under the doctrine of equivalents one or more of the claims of the 212 Patent by making, using, importing, selling and/or offering to sell, in this judicial district and/or elsewhere in the United States, the Alta, which is covered by at least claim 6 of the 212 Patent.

76. The Alta is a pedometer with a step counter. Ex. 9 (Alta Product Manual) at 12; Ex 12 (Teardown Fitbit Alta).

77. The Alta can display "steps," therefore it must include a transmitter in communication with the step counter to generate a step count signal corresponding to each step and transmit the step count signal as well as a receiver to receive the step count signal transmitted from the transmitter. Ex. 9 (Alta Product Manual) at 12.

78. The receiver is mountable on a user body portion. Ex. 9 (Alta Product Manual) at 1.

79. The Alta includes a data processor programmed to calculate the distance travelled by the user. Ex. 12 (Teardown Fitbit Alta); Ex. 2 (Fitbit Help Answer on Extra Steps) at 2.

80. According to Fitbit, its devices utilize a "finely tuned algorithm" for step counting that accounts for "people walking and running." Ex. 2 (Fitbit Help Answer on Extra Steps) at 2.

81. Fitbit trackers "calculate distance by multiplying [] walking steps and walking stride length … [and] running steps are multiplied by [] running stride length." Ex. 3 (Fitbit Help Answer on Stride Length) at 2.

82. As such, the device multiplies the number of steps counted by the step counter by a stride length that varies in accordance with a stride rate.

83. To improve accuracy of distance measurement, Fitbit devices allow the user to "adjust" the device's algorithm based on the user's personal stride rate for both walking and running. Ex. 3 (Fitbit Help Answer on Stride Length) at 2.

84. Fitbit instructs users to determine their personal stride length by both walking and running, separately, a distance the user is "sure of." Ex. 3 (Fitbit Help Answer on Stride Length) at 2.

85. Thus, the device calculates a distance travelled by multiplying a number of steps counted by a stride length that varies according to a rate at which steps are taken, and is further programmed to derive an actual stride length from a range of stride lengths calculated from a range of corresponding stride rates, at least whenever a user utilizes this feature.

86. As such, at least claim 6 of the 212 Patent reads on the Alta.

Fitbit Flex

87. Further, Fitbit has infringed literally and/or under the doctrine of equivalents one or more of the claims of the 212 Patent by making, using, importing, selling and/or offering to sell, in this judicial district and/or elsewhere in the United States, the Flex, which is covered by at least claim 6 of the 212 Patent.

88. The Flex is a pedometer with a step counter. Ex. 10 (Flex Product Manual) at 10.

89. The Flex can display "steps," therefore it must include a transmitter in communication with the step counter to generate a step count signal corresponding to each step and transmit the step count signal as well as a receiver to receive the step count signal transmitted from the transmitter. Ex. 10 (Flex Product Manual) at 10.

90. The receiver is mountable on a user body portion. Ex. 10 (Flex Product Manual) at 1.

91. The Flex includes a data processor programmed to calculate the distance travelled by the user. Ex. 13 (Teardown Fitbit Flex); Ex. 2 (Fitbit Help Answer on Extra Steps) at 2.

92. According to Fitbit, its devices utilize a "finely tuned algorithm" for step counting that accounts for "people walking and running." Ex. 2 (Fitbit Help Answer on Extra Steps) at 2.

93. Fitbit trackers "calculate distance by multiplying [] walking steps and walking stride length … [and] running steps are multiplied by [] running stride length." Ex. 3 (Fitbit Help Answer on Stride Length) at 2.

94. As such, the device multiplies the number of steps counted by the step counter by a stride length that varies in accordance with a stride rate.

95. To improve accuracy of distance measurement, Fitbit devices allow the user to "adjust" the device's algorithm based on the user's personal stride rate for both walking and running. Ex. 3 (Fitbit Help Answer on Stride Length) at 2.

96. Fitbit instructs users to determine their personal stride length by both walking and running, separately, a distance the user is "sure of." Ex. 3 (Fitbit Help Answer on Stride Length) at 2.

97. Thus, the device calculates a distance travelled by multiplying a number of steps counted by a stride length that varies according to a rate at which steps are taken, and is further programmed to derive an actual stride length from a range of stride lengths calculated from a range of corresponding stride rates, at least whenever a user utilizes this feature.

98. As such, at least claim 6 of the 212 Patent reads on the Flex.

Damages

99. Blackbird Technologies is informed and believes, and on that basis alleges, that Defendant has gained profits by virtue of its infringement of the 212 Patent.

100. Blackbird Technologies has sustained damages as a direct and proximate result of Defendant's infringement of the 212 Patent.

101. As a consequence of Defendant's infringement of the 212 Patent, Blackbird Technologies is entitled to recovery of damages in the form of, at a minimum, a reasonable royalty.

## PRAYER FOR RELIEF

102. WHEREFORE, Blackbird Technologies respectfully requests that this Court enter judgment against Defendant, as follows:

A. Adjudging that the 212 Patent is valid and enforceable;

B. Adjudging that Defendant has infringed one or more claims of the 212 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271;

C. An award of damages to be paid by Defendant adequate to compensate Blackbird Technologies for its past infringement and any continuing or future infringement up until the date such judgment is entered, and in no event less than a reasonable royalty, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Blackbird Technologies for Defendant's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

D. Ordering Defendant to continue to pay royalties to Blackbird Technologies for any continuing or future infringement of the 212 Patent on a going-forward basis;

E. Awarding Blackbird Technologies pre-judgment and post-judgment interest at the maximum rate permitted by law on its damages; and

F. Blackbird Technologies be granted such further relief as this Court deems just and proper under the circumstances.

<u>DEMAND FOR JURY TRIAL</u>

Blackbird Technologies demands a trial by jury on all claims and issues so triable.

| | |
|---|---|
| Dated: August 8, 2016 | STAMOULIS & WEINBLATT LLC |
| OF COUNSEL | */s/ Stamatios Stamoulis* |
| | Stamatios Stamoulis #4606 |
| Christopher Freeman |   stamoulis@swdelaw.com |
| cfreeman@blackbird-tech.com | Richard C. Weinblatt #5080 |
| Wendy Verlander |   weinblatt@swdelaw.com |
| wverlander@blackbird-tech.com | Two Fox Point Centre |
| Deborah Yates | 6 Denny Road, Suite 307 |
| dyates@blackbird-tech.com | Wilmington, DE 19809 |
| Blackbird Tech LLC d/b/a | Telephone: (302) 999-1540 |
| Blackbird Technologies | |
| One Boston Place, Suite 2600 | *Attorneys for Plaintiff* |
| Boston, MA 02108 | *Blackbird Tech LLC* |
| 617.307.7100 | *d/b/a Blackbird Technologies* |